IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>HAMMADUZZAMAN SYED,<br><br>        Defendant. | 8:21CR57<br><br><br>MEMORANDUM<br>AND ORDER |

Defendant Hammaduzzaman Syed ("Syed") is currently serving a 10-year term of imprisonment after a jury found him guilty of attempting to solicit a minor, in violation of 18 U.S.C. § 1594(a). Now before the Court is Syed's timely Petition Pursuant to 28 U.S.C. § 2255 for a Writ of Habeas Corpus, and Motion to Vacate/Set Aside the Petitioner's Conviction and Sentence, and Request for an Evidentiary Hearing (Filing No. 115).

Having carefully considered the entirety of the record in this matter as well as the parties' arguments, s*ee* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(a), the Court finds the record conclusively demonstrates Syed is not entitled to relief. For the reasons stated more fully below, his petition and request for a hearing are denied. *See* 28 U.S.C. § 2255(b); *Love v. United States*, 949 F.3d 406, 411 (8th Cir. 2020).

I.  **BACKGROUND**

A grand jury indicted[1] (Filing No. 43) Syed on December 14, 2021, for "knowingly attempt[ing] to patronize and solicit a minor who had not yet attained the age of 18 years, knowing the minor was under the age of 18 years old, and knowing the

---

[1]Syed was previously indicted (Filing No. 1) in this matter on one count of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b). That indictment was dismissed upon the government's oral motion at sentencing.

minor would be caused to engage in a commercial sex act." *See* 18 U.S.C. § 1594(a). Syed's jury trial began on March 21, 2022, at which he was represented by retained counsel, Glenn Shapiro ("Shapiro").

During the two-day trial, the government presented evidence that Syed used the website "skipthegames.eu" to browse and respond to ads for commercial sex. Among the dozens of ads he replied to was one maintained by undercover officers, Douglas County Sheriff's Deputies Austin Pratt ("Deputy Pratt") and Chad Miller ("Deputy Miller"). The advertisement at issue was titled "How Many Licks Does It Take?" and featured altered photographs of Deputy Nicole O'Haver ("Deputy O'Haver"), whose image was used by the officers with her permission, as well as images of candy. The poster's age was listed as nineteen, the minimum age required by the website.

Syed responded to the advertisement on November 17, 2020, and asked if the poster was available that night. Posing as the poster, Deputy Pratt replied, "I am not, HMU [hit me up] tomorrow." Syed agreed he would pay $100 for 30 minutes with the poster. Deputy Pratt proceeded to tell Syed the poster "live[d] with [her] mom" and couldn't "drive yet."

As they discussed their plans further, Syed told the poster he wanted to "[j]ust have lovely fun." Deputy Pratt asked for more details about what Syed wanted, directly disclosing the hypothetical poster was a minor: "Gotta tell me lol! . . . I'm only 15, I'm not into freaky shit." Still, Syed responded with a list of sexual positions. Deputy Pratt replied, "Sounds good! I have the apartment to myself at 11. I am 15, no car yet, so you can come here or just pick me up." Syed continued to make plans to meet the poster the next day.

On November 18, 2020, Syed spoke again with the poster and verified their plans. Deputy Pratt told Syed the poster "[had] a little bit left in [her] high school algebra class" but would meet him after. He also asked Syed to bring condoms and vodka, and Syed

agreed to bring "coke" instead of alcohol. Deputy O'Haver called Syed that afternoon pretending to be the poster and establishing the time of his arrival to an address in Omaha, Nebraska.

Later that day, Syed arrived at the address and was arrested by Deputy Joshua Echtinaw ("Deputy Echtinaw"), who found on Syed a bag containing condoms and two bottles of Coca-Cola. Deputy Pratt read Syed his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 467-73 (1966), and Syed promptly signed a waiver agreeing to speak with the officers. A video shown to the jury at trial depicted Syed "admitt[ing] to buying condoms to have sex with an individual whom he believed to be fifteen" and "showed $100 in cash being taken" from his belongings.

A week before trial, the government filed its Trial Brief (Filing No. 52). That brief foresaw few evidentiary issues but stated the government intended "to object to any statements or argument on entrapment unless and until the record contains sufficient evidence warranting an entrapment jury instruction or the Defendant otherwise makes a showing that such an instruction will be warranted." At the outset of trial before the jurors entered the courtroom, the Court asked the parties if they had discussed that issue any further. Shapiro responded that—due to his recent experiences in similar cases—he "would not go down that road unless the Court [was] inclined to" include a jury instruction on entrapment. It was not likely "to come into play," he explained, "based on the evidence."

As the trial went on, Deputies Pratt, O'Haver, and Echtinaw testified to the above events. Among other things, Deputy Pratt testified to setting the poster's age to nineteen years-old so the advertisement would not be "flagged and taken down" by the website. He also testified that certain words, including "tight, wet, bare, [and] clean," and items in photographs, like backpacks and candy, are "commonly used when minors are posted to commercial sex sites." The officers used some of that imagery and lingo in creating the advertisement in this case.

3

Shapiro did not object to Deputy Pratt's testimony on that point. On cross-examination, Deputy Pratt conceded the referenced terms "are [] not mutually exclusive to minors." Shapiro also cross-examined Deputy Pratt regarding the fact that law enforcement found no evidence Syed was otherwise involved in soliciting minors in the past or in his other replies to ads on the website.

Deputy Pratt further testified that "[a]pproximately 150-200 people" "initially responded to [the officers'] advertisement." After the poster was identified as fifteen years-old, however, "less than 5% . . . continued to speak" with the poster, and only Syed attempted to meet her. Shapiro did not object to this testimony either.

At the end of the government's case in chief, Shapiro made an oral "motion to dismiss for failure to prove a prima facie case sufficient to submit to the jury" on the evidence presented. *See* Fed. R. Crim. P. 29. The Court denied the motion. Following a jury instruction conference with the parties, the Court ordered the jurors to return to the courtroom and the parties presented their closing arguments.

In his closing argument, Shapiro portrayed the undercover officers as having laid a "trap" for Syed, soliciting, enticing, and luring him into meeting with the poster. He argued that evidence demonstrated Syed's actions "did not meet the definition of 'soliciting.'" He did not discuss "entrapment" by name or request the inclusion of an entrapment instruction.

The Court read aloud the jury instructions after the closing arguments. The case was submitted to the jury at 12:04 p.m. on March 22, 2022. At 2:20 p.m. that day, the jury returned their verdict (Filing No. 69) finding Syed guilty of attempting to solicit a minor. On July 26, 2022, the Court sentenced Syed to 10 years imprisonment followed by 5 years of supervised release (Filing No. 83).

The Eighth Circuit summarily dismissed Syed's subsequent appeal of his conviction, finding the record was not sufficiently developed to evaluate his claim that

4

his trial "counsel was ineffective for failing to request an entrapment instruction and object at various points during trial." *United States v. Syed*, No. 22-2657, 2023 WL 4881459, at *1 (8th Cir. Aug. 1, 2023) (unpublished per curiam); *see also United States v. Ramirez-Hernandez*, 449 F.3d 824, 826-27 (8th Cir. 2006) (discussing the limited circumstances when such a claim will be considered on direct appeal). He was instead advised that his claim would "have to be litigated, if at all, in a motion brought under 28 U.S.C. § 2255." *Syed*, 2023 WL 4881459, at *1.

In the present § 2255 motion, Syed argues that his right to counsel under the Sixth Amendment to the United States Constitution was violated due to the ineffective assistance of his trial counsel. On February 27, 2024, the Court ordered (Filing No. 117) the government to respond to Syed's petition, finding he raised a potentially colorable claim for relief. *See* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 4(b) (requiring the Court to complete a prompt initial review of a petitioner's § 2255 motion and order the United States Attorney to respond to the motion or take other action unless "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief"); 18 U.S.C. § 2255(b). The government followed course (Filing No. 120), and Syed replied (Filing No. 123).

## II. DISCUSSION

Syed contends his retained trial counsel was unconstitutionally ineffective by failing to (1) object to trial testimony he asserts was improper and (2) pursue an entrapment instruction. He fails to demonstrate his counsel's representation at trial violated his rights.

### A. Standard of Review

The Sixth Amendment guarantees criminal defendants "[t]he right to counsel includ[ing] 'the right to effective assistance of counsel.'" *Garza v. Idaho*, 586 U.S. 232, 743 (2019) (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). That right

does not guarantee a defendant perfect counsel or a successful defense, however. *See Harrington v. Richter*, 562 U.S. 86, 110 (2011); *Graham v. Dormire*, 212 F.3d 437, 440 (8th Cir. 2000). Instead, a defendant is entitled to "reasonably competent" counsel to ensure they receive a "fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687.

Counsel are "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690 (stating that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). The burden rests on the defendant to demonstrate their right to counsel was violated by ineffective assistance. *See Dunn v. Reeves* 594 U.S. 731, 739 (2021); *Langford v. United States*, 993 F.3d 633, 637 (8th Cir. 2021). To do so, the defendant must demonstrate (1) "deficient performance—that the attorney's error was 'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment,'" and (2) "that the attorney's error 'prejudiced the defense.'" *Weaver v. Massachusetts*, 582 U.S. 286, 299-300 (2017) (quoting *Strickland* at 687). That standard is difficult to meet and "must be applied with scrupulous care." *Harrington*, 562 U.S. at 105.

Under the first prong, the standard of effective assistance "is a general one" permitting a "substantial" range of reasonable decisions. *Id.* "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690). To meet the second prong, the defendant must prove there is "a reasonable probability . . . sufficient to undermine confidence in the outcome of the proceedings" "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

B. **Evidentiary Issues**

Syed first argues Shapiro was deficient in failing to object to certain testimony presented and relied on by the government. In his mind, "[t]he [g]overnment presented

objectionable and highly prejudicial testimony regarding how minors pose as adults on the website in question." That testimony about what words and symbols are used to indicate minority was speculative and lacked foundation, according to Syed. Syed also believes Shapiro should have objected to the "irrelevant[] and highly prejudicial" testimony that he was the only person of about 150 to 200 individuals who responded to the advertisement to attempt to meet with the poster after knowing she was fifteen years-old.

The government, on the other hand, asserts "[t]here was no improper testimony in [Syed's] case." Because Deputy Pratt's "testimony [was] admissible under" the Federal Rules of Evidence, the government argues, "[t]here was no proper basis upon which defense counsel could have objected." Further, Shapiro "thoroughly questioned Deputy Pratt during cross-examination" regarding the testimony at issue, pointing out that the terms "were not mutually exclusive to minors."

"The ineffective assistance standard is highly deferential to an attorney's judgment, particularly on issues such as whether to object to the introduction of evidence at trial." *United States v. Calhoun*, 721 F.3d 596, 604 (8th Cir. 2013). An attorney's failure to object to admissible evidence cannot be the basis for an ineffective-assistance claim. *See Garrett v. United States*, 78 F.3d 1296, 1302 (8th Cir. 1996); *Thai v. Mapes*, 412 F.3d 970, 978 (8th Cir. 2005) (concluding the petitioner's claim failed because he could "not show that his counsel performed deficiently by failing to raise a meritless argument"). Syed's motion fails in this respect because he does not demonstrate the evidence he now challenges was somehow inadmissible.

"Lay testimony is admissible under Federal Rule of Evidence 701 if it is: '(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *United States v. Dierks*, 978 F.3d 585, 592 (8th Cir. 2020) (quoting Rule 701). Though courts are

7

sometimes "skeptical of lay testimony from law enforcement officers 'interpreting' evidence," *id.*, lay witnesses are generally permitted to offer their interpretations of their conversations and other testimony based on "[p]ersonal knowledge or perceptions based on experience," *United States v. Gilbertson*, 970 F.3d 939, 951 (8th Cir. 2020) (quoting *United States v. Smith*, 591 F.3d 974, 982 (8th Cir. 2010)).

Deputy Pratt testified that he had worked for the Douglas County Sheriff's Office for seventeen years and been involved in "more than 25" investigations into the sex trafficking of minors, five or so of which he was involved in through an undercover role. Deputy Pratt went on to discuss his understanding of why and how law enforcement carry out undercover sex-trafficking investigations, and how the underlying investigation in this case began. As he continued to testify as to the photos and terminology used in creating the advertisement, he confirmed those phrases and symbols are "commonly used when minors are posted to commercial sex sites."

This testimony was not, as Syed asserts, "speculative" or entirely lacking in foundation. Just as Rule 701 requires, Deputy Pratt testified regarding the terms and imagery commonly associated with minors based on his direct involvement in dozens of investigations of minor exploitation. *See Dierks*, 978 F.3d at 593 (stating the challenged "testimony was 'about facts within [the witness's] range of generalized knowledge, experience, and perception" (quoting *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009))). It was also admissible to "help the jury or the court to understand the facts about which the witness is testifying," namely how advertisements of minors are often posted to websites like "skipthegames.eu" and those patterns the officers mimicked in their own ad. *United States v. Turner*, 781 F.3d 374, 388 (8th Cir. 2015).

His testimony was further limited by the fact that he elaborated that the referenced words were "just a sampling" and could also refer to non-minors. Regardless, that testimony was largely relevant to Deputy Pratt's first-hand knowledge about the production of the fake advertisement and other advertisements of minors on commercial

8

sex websites, not to speculating about Syed's mindset or decisions. *See Dierks*, 978 F.3d at 592-93 (contrasting such testimony with improper testimony of law enforcement officers that attempt to decode or interpret conversations between defendants in which they were not involved); *Gilbertson*, 970 F.3d at 951.

Deputy Pratt's testimony regarding the other responses to the advertisement was also admissible. Rule 401's "basic standard of relevance [] is a liberal one." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993); *see also United States v. Sherman*, 81 F.4th 800, 808 (describing the threshold for relevance as "quite minimal" (quoting *United States v. Walker*, 68 F.4th 387, 391-92 (8th Cir. 2023))). The Court is confident Deputy Pratt's testimony satisfied this low bar in this regard. *See United States v. Johnson*, 535 F.3d 892, 895 (8th Cir. 2008) (explaining information "necessary for the narrative of the government's case" that "provided the jury with factual context for [the defendant's] investigation and arrest" were admissible).

"The Federal Rules of Evidence 'favor admitting relevant evidence absent a specific reason to exclude it.'" *Doe v. Young*, 664 F.3d 727, 733 (8th Cir. 2011) (quoting *Moore v. United States*, 648 F.3d 634, 639 (8th Cir. 2011)); *see also* Fed. R. Evid. 402. Syed asserts the government used this information prejudicially to "singl[e] him out for guilt because he was supposedly the only one of the group" to organize a meeting with the fifteen-year-old poster. But Federal "Rule [of Evidence] 403 is only a bar to evidence that is *unfairly prejudicial*, not merely prejudicial." *Burris v. Golf Underwriters Ins. Co.*, 787 F.3d 875, 881 (8th Cir. 2015); *see also* Fed. R. Evid. 403. "Unfair prejudice 'speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'" *Id.* (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)).

Based on the record and context at trial, Deputy Pratt's testimony that Syed was the only one of 150 to 200 individual responders to the ad that attempted to meet up with the purported underage poster cannot be said to be unfairly prejudicial. Of course,

9

"[d]amaging evidence is always prejudicial" to an extent. *United States v. Crow Ghost*, 79 F.4th 927, 935 (8th Cir. 2023). But that evidence is not the type of information "which is so inflammatory on its face as to divert the jury's attention" and "suggest decision on an improper basis." *United States v. Redd*, 81 F.4th 822, 828 (8th Cir. 2023) (quoting *United States v. Schave*, 55 F.4th 671, 678 (8th Cir. 2022)). Nor does it create any risk of such unfair prejudice that "substantially outweigh[s]" its probative value. Fed. R. Evid. 403; *see also Crow Ghost*, 79 F.3d at 935-36 ("When evaluating a claim of undue prejudice, this Court has stated that a jury 'is entitled to know about the context of the crime and any events that help explain the context.'" (quoting *United States v. Mora*, 81 F.3d 781, 783 (8th Cir. 1996))).

Because the evidence Syed challenges was admissible, Shapiro could not have rendered ineffective assistance for failing to object to its introduction at trial. *See Garrett*, 78 F.3d at 1302. Beyond that, Syed has failed to demonstrate resulting prejudice. The government presented clear and overwhelming evidence that Syed committed the offense, including Syed's post-arrest admissions. *See Christenson v. Ault*, 598 F.3d 990 (8th Cir. 2010) (concluding it was impossible to demonstrate prejudice where the evidence of the defendant's guilt was overwhelming). His brief argument that he "suffered great prejudice from the introduction" of relatively minor evidence does not suffice to show a "reasonable probability that the result of the trial would have been different had counsel successfully objected to the testimony." *Bounds v. Delo*, 151 F.3d 1116, 1119 (8th Cir. 1998).

    **C.**    **Entrapment**

Syed also claims Shapiro wrongly failed to request an entrapment instruction at trial. Syed believes the officers "intentionally used deceit and trickery to ensnare, entrap, and induce [him] to commit the crime," by letting him "agree to have sex with an adult" only to later inform him she was fifteen. Shapiro, he argues, "should have at least attempted to submit an entrapment instruction" based on this evidence, especially

10

because Syed originally agreed to the terms of the meeting "with someone whom [he] believed to be an adult."

The government contends any such pursuit of an entrapment instruction would have been unsuccessful anyway. The Court agrees. "A defendant is entitled to an instruction on the affirmative entrapment defense if sufficient evidence exists from which a reasonable jury could find that [the] government entrapped him." *United States v. Strubberg*, 929 F.3d 969, 976 (8th Cir. 2019) (quoting *United States v. Wynn*, 827 F.3d 778, 786 (8th Cir. 2016)) (alterations in original). At the outset, the defendant has the burden to establish "government inducement of the crime." *United States v. Tobar*, 985 F.3d 591, 592 (8th Cir. 2021). Only then does the burden shift to the government to show the defendant was predisposed to commit the crime. *Id.*

Here, there is little to no evidence from which a jury could have found the government induced Syed to commit the offense. "Inducement exists when the government implanted the criminal design in the defendant's mind." *Id.* (quoting *United States v. Young*, 613 F.3d 735, 747 (8th Cir. 2010)); *see also United States v. Myers*, 575 F.3d 801, 806 (8th Cir. 2009) ("Inducement is government conduct that creates a substantial risk that an otherwise law-abiding person will commit a criminal offense."). That can occur through the existence of "pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship." *Id.* at 593 (quoting *Myers*, 575 F.3d at 806). No matter the form, the Eighth Circuit "considers four factors to determine inducement: (1) whether the government initiated the contact; (2) the effect of the photos sent by the government; (3) whether the government introduced the topics of meeting and sex; and (4) the degree to which the government influenced the behavior of the defendant by portraying the minor as sexually precocious." *Id.*

These factors do not support a finding of entrapment in Syed's case. Syed initiated contact with the poster in responding to her ad. Syed also was the first to bring up meeting in person. Though he may have then believed her to be nineteen years-old, after he was told she was fifteen he continued to tell her his preferred sexual positions and arrange a meeting. *Id.* ("Tobar learned Kitty's age early on and had many chances to end contact, but rather escalated it by requesting nude photos and arranging the meeting.").

The government also did little to portray the poster as sexually precocious. Although the advertisement contained sexual material, the officer's messages were not sexually explicit. Nor did the officers post or send any explicit photos. *See United States v. Joiner*, 39 F.4th 1003, 1009 (8th Cir. 2022) (explaining "the effect of the single photo sent by the undercover officer to Joiner, depicting a clothed female, was negligible"). The possibility that Syed once believed the poster to be an adult woman does not transform that acceptable conduct into "*creative* activity of law-enforcement officials" causing an otherwise innocent individual to break the law. *Strubberg*, 929 F.3d at 976 (quoting *Wynn*, 827 F.3d at 786) (emphasis in original).

In light of the entire record, any evidence of entrapment fell far below that required to entitle Syed to an instruction. Because requesting an entrapment instruction would have been unsuccessful, Shapiro did not fall short in deciding not to go down that road. *See Dodge v. Robinson*, 625 F.3d 1014, 1019 (8th Cir. 2010). The lack of evidence of entrapment also shows it is unlikely that Syed's trial would have led to a different outcome even if the jury was instructed on that issue. *See Springs v. Payne*, 95 F.4th 596, 601 (8th Cir. 2024) (explaining the *Strickland* "prejudice standard requires a 'substantial, not just conceivable' likelihood of a different result" (quoting *Harrington v. Richter*, 562 U.S. 86, 112, 131 (2011))). Altogether, Syed fails to demonstrate his grounds for relief.

D. **No Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(1)(B), Syed cannot appeal the Court's denial of relief unless the Court issues a certificate of appealability. *See also* Fed. R. App. P. 22(b)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To meet his burden in this case, Syed "must demonstrate that reasonable jurists would find the [Court's] assessment of [his] constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because he has not done that, the Court will not issue a certificate of appealability in this case.

For the foregoing reasons,

IT IS ORDERED:

1. Defendant Hammaduzzaman Syed's Petition Pursuant to 28 U.S.C. § 2255 for a Writ of Habeas Corpus, and Motion to Vacate/Set Aside the Petitioner's Conviction and Sentence, and Request for an Evidentiary Hearing (Filing No. 115) is denied.
2. No certificate of appealability will issue.
3. A separate judgment will be entered.

Dated this 25th day of June 2024.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge